UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MARION COSTELLO,

    Plaintiff,

v.                                                         Case No.:   2:18-cv-299-FtM-MRM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## OPINION AND ORDER

Before the Court is the Complaint, filed on May 1, 2018. (Doc. 1). Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for supplemental security income ("SSI"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a joint memorandum detailing their respective positions. For the reasons set forth herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I.  Social Security Act Eligibility, the ALJ Decision, and Standard of Review**

    **A.  Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the Plaintiff unable to do her previous work or any other

substantial gainful activity that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505-.1511, 416.905-.911.

B. **Procedural History**

On December 15, 2010, Plaintiff filed an application for disability insurance benefits and supplemental security income. (Tr. at 93). Plaintiff alleged an onset date of March 16, 2005. (*Id.* at 927). Her application was denied initially on February 11, 2011 and again on reconsideration on July 14, 2011. (*Id.* at 93-94). A hearing was held before Administrative Law Judge ("ALJ") John Murdock on April 22, 2013. (*Id.* at 54). ALJ Murdock issued an unfavorable decision on June 27, 2013, finding Plaintiff not to be under a disability. (*Id.* at 23-24). Plaintiff requested a review of the decision, which the Appeals Council denied. (*Id.* at 1).

Plaintiff then appealed to the United States District Court, which remanded the claim on March 17, 2015. (*Id.* at 1049-50). The Appeals Council vacated the Commissioner's final decision and remanded the claim to an ALJ for further proceedings. (*Id.* at 1043-45). A second hearing was held before ALJ Maria C. Northington in Fort Myers, Florida, on November 7, 2016. (*Id.* at 947). ALJ Northington issued an unfavorable decision on February 23, 2017. (*Id.* at 940). Plaintiff requested a review of that decision, and on March 16, 2018, the Appeals Council denied Plaintiff's request for review. (*Id.* at 918-20). Plaintiff filed a Complaint in the United States District Court on June 28, 2018. (Doc. 1). This case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 15).

C. **Summary of the ALJ's Decision**

An ALJ must follow a five-step sequential evaluation process to determine if a Plaintiff has proven that he is disabled. *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir.

2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[1] An ALJ must determine whether the Plaintiff: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform her past relevant work; and (5) can perform other work found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The Plaintiff has the burden of proof through step four, and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 15, 2010, the application date. (Tr. at 929). At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: "bipolar disorder, schizoaffective disorder NOS, depressive disorder NOS, and borderline intellectual functioning (BIF)." (*Id.* at 930 (citing 20 C.F.R. 416.920(c))). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. (*Id.* (citing 16 C.F.R. § 416.920(d), 416.925, 416.926)). At step four, the ALJ determined the following as to Plaintiff's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a wide range of work at all exertional levels that implicitly include the performance of sedentary to heavy work, but with the following non-exertional limitations. She has no postural limitations with the exception that [she] should avoid climbing ropes and scaffolds, but her ability to climb ladders is not affected. She

---

[1] Unpublished opinions may be cited as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

> retains the capacity to understand, remember, and carry out simple instructions and perform simple, routine, and repetitive tasks as consistent with unskilled work. In the course of work, she is to have no in-person contact with the public, except for incidental contact and telephonic contact. She is capable of only occasional contact with coworkers and supervisors. In this instance, occasional is defined as interaction and coordination but not necessarily proximity to the same.

(*Id.* at 932).

The ALJ further found that Plaintiff had no past relevant work and that considering her "age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [she] can perform." (*Id.* at 938 (citing 20 C.F.R. § 416.969(a)). Thus, the ALJ concluded that Plaintiff had not been under a disability since December 15, 2010. (*Id.* at 939).

### D. Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's

decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (noting that court must scrutinize entire record to determine reasonableness of factual findings).

**II.     Analysis**

On appeal, Plaintiff raises one issue: Whether the ALJ evaluated the medical opinion evidence consistent with the regulations and Eleventh Circuit precedent. (Doc. 22 at 16). Contained within that issue, however, are two allegations of error. First, Plaintiff contends that the ALJ failed to provide sufficient reasons for rejecting the treating source opinions of psychiatrist Dr. Omar Rieche and nurse practitioner Susan Samerdyke. (*Id.* at 20-24). Second, she argues that despite giving great weight to the opinion of Dr. Kasprzak, an Agency consultative examiner, the ALJ failed to include work-related limitations related to Dr. Kasprzak's opinion regarding Plaintiff's marked limitations. (*Id.* at 24). The Court first addresses Plaintiff's argument related to the ALJ's treatment of Dr. Rieche and Nurse Samerdyke's opinions and then turns to the issue of the ALJ's treatment of Dr. Kasprzak's opinion.

Dr. Rieche began providing mental health treatment to Plaintiff in January 2006, while Nurse Samerdyke, who worked with Dr. Rieche, began treating Plaintiff in December 2011. (Tr. at 646-48, 902-04; *see also id.* at 596-665, 872-905). On November 30, 2012, Dr. Rieche and Nurse Samerdyke completed a treating source opinion questionnaire related to Plaintiff's mental impairments. (*Id.* at 867-70). They opined that Plaintiff had extreme impairments, meaning that she was "[u]nable to function . . . over 50% of the work day or work week," in the following

areas: (1) "ability to accept instruction from or respond appropriately to criticism from supervisors or superiors;" (2) "ability to respond appropriately to co-workers or peers;" (3) "ability to relate to general public and maintain socially appropriate behavior;" (4) "ability to work in cooperation with or in proximity to others without being distracted by them;" (5) "ability to carry through instructions and complete tasks independently;" (6) "ability to behave predictably, reliably and in an emotionally stable manner;" and (7) "ability to tolerate customary work pressures." (*Id.* at 867-69). They opined that Plaintiff had marked impairments, meaning that she was "[u]nable to function . . . from 26% to 50% of the work day or work week," in the following areas: (1) "ability to work in coordination with or in proximity to others without distracting them or exhibiting behavioral extremes;" (2) "ability to perform and complete work tasks in a normal work day or week at a consistent pace;" (3) "ability to process subjective information accurately and to use appropriate judgment;" (4) "ability to maintain attention and concentration for more than brief periods of time;" (5) "ability to perform at production levels expected by most employers;" and (6) "ability to remember locations and workday procedures and instructions." (*Id.*). They also opined that Plaintiff had moderate impairments, meaning that she was "[u]nable to function . . . from 11% to 25% of the work day or work week," in her ability to respond appropriately to changes in work setting," "to be aware of normal hazards and take necessary precautions," and "to maintain personal appearance and hygiene." (*Id.* at 869). Finally, they opined that Plaintiff's condition would likely deteriorate if she was placed under stress. (*Id.*).

The ALJ gave Dr. Rieche and Nurse Samerdyke's opinions little weight. (*Id.* at 937). In so doing, the ALJ reasoned that the definitions contained within the questionnaire were "inconsistent with the Agency's standards and [did] not fall within the applicable regulations."

6

(*Id.*).  Moreover, the ALJ determined that there was no support for Plaintiff's alleged "level of debility in the objective medical record." (*Id.*).  The ALJ noted that mental status examinations generally reflected unremarkable or positive findings and that there were numerous instances over the years in which she went to the emergency room with minor physical complaints but never complained of mental issues.  (*Id.*).  Finally, the ALJ relied on the hearing testimony of medical expert Dr. Ricardo Buitrago, who testified at the hearing that Dr. Rieche's and Nurse Samerdyke's assessment was not supported by the objective evidence.  (*Id.*).

Plaintiff argues that the ALJ's decision is flawed in two ways.  First, she contends that contrary to the ALJ's conclusion, the questionnaire relied on by Dr. Rieche and Nurse Samerdyke is not inconsistent with the Agency regulations.  (Doc. 22 at 21).  Second, Plaintiff asserts that the ALJ improperly "reasoned that Dr. Rieche and Nurse Samerdyke's own examination findings did not support the limitations" and that rejecting their opinions on this basis was "an impermissible substitution of the ALJ's lay opinion for that of the medical expert." (*Id.* at 22).

An ALJ may give a treating source's opinion controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in" the record.  20 C.F.R. § 416.927(c)(2).  If an ALJ concludes that the opinion should not be given controlling weight, he or she considers the factors laid out in 20 C.F.R. § 416.927(c)(2)(i),  (c)(2)(ii), and (c)(3) through (c)(6).  20 C.F.R. § 416.927(c)(2).  An ALJ need not, however, "explicitly address each of those factors." *Lawton v. Comm'r Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011).  The Court addresses each of Plaintiff's arguments in turn.

First, the Court concludes that the ALJ did not err in finding that the questionnaire was inconsistent with Agency regulations. As noted by Defendant, the questionnaire defined the terms "mild," "moderate," "marked," and "extreme" as a percentage of the work day or work week during which the claimant was "[u]nable to function" in the relevant area. (*Id.* at 867). This is in contrast to the Agency regulations' terms – "mild," "moderate," "marked," and "extreme" – which "speak to the degree of severity," rather than to a complete inability to function. (Doc. 22 at 26 (quoting 20 C.F.R. § 416.920a(c)(2), (4); 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)). Thus, the ALJ did not err in concluding that the terms and definitions contained within the questionnaire were inconsistent with the regulations. Even assuming, *arguendo*, that the ALJ did err in this regard, the decision is nonetheless supported by substantial evidence, as outlined below.

Plaintiff argues that the ALJ improperly "reasoned that Dr. Rieche and Nurse Samerdyke's own examination findings did not support the limitations." (*Id.* at 22). Despite Plaintiff's claims to the contrary, an ALJ may properly discount a treating source's opinion on the basis that the opinion is inconsistent with the source's own treatment notes. *See Crawford v. Comm'r Soc. Sec.*, 363 F.3d 1155, 1159-60 (11th Cir. 2004). As noted by the ALJ, numerous treatment notes reflect that other than Plaintiff's mood and affect, her mental exams throughout the years were often unremarkable. For example, Dr. Rieche's treatment notes from November 2008, December 2008, February 2009, May 2009, August 2009, and January 2010 similarly reflect that Plaintiff was alert and oriented; had full-range and appropriate affect; had a pleasant mood; was cooperative and demonstrated appropriate behavior; had a logical and goal-directed thought process; had appropriate thought content; had fair insight and judgment; and had intact

recent and remote memory. (Tr. at 597, 601, 603, 606, 608, 610). Nurse Samerdyke's treatment notes from 2011 through 2013 also reflect generally unremarkable assessments. (*Id.* at 872-905).

Moreover, other medical evidence relied on by the ALJ supports the decision. The ALJ found it relevant that Plaintiff sought emergency room treatment for "minor physical complaints on multiple occasions" but "never complained of mental issues, and mental status examinations performed during the course of these visits were consistently normal." (*Id.* at 937; *see also* 752-865). As noted by Defendant, subsequent assessments typically revealed mental status findings that were unremarkable. (*Id.* at 1171-72, 1175-76, 1181-82, 1185-87, 1190-91, 1193-95, 1198-1200, 1207-09, 1211-13, 1215-18, 1220-22, 1224-26). Finally, the ALJ relied on Dr. Buitrago's hearing testimony in giving Dr. Rieche's and Nurse Samerdyke's opinion little weight. (*Id.* at 937). Dr. Buitrago testified that the functional assessment was not supported by Dr. Rieche's and Nurse Samerdyke's treatment notes. (*Id.* at 984-85, 991-92). A review of the assessment and their notes, as outline above, confirms this determination.

It is the ALJ's job to evaluate and weigh evidence and resolve any conflicts in the record. "In reviewing an ALJ's decision, we may not decide the facts anew, make credibility determination[s], or re-weigh the evidence, and we must affirm the ALJ's findings if they are supported by substantial evidence, even if the evidence preponderates against them." *Jones v. Soc. Sec. Admin., Comm'r*, 695 F. App'x 507, 508 (11th Cir. 2017) (citing *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014); *Winschel v. Comm'r., Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011)). Upon review of the record, the Court finds that the ALJ's decision is supported by substantial evidence.

Next, the Court turns to the issue of the ALJ's allegedly erroneous treatment of Dr. Kasprzak's opinion. Dr. Kasprzak, an Agency consultative examiner, noted that Plaintiff's mood

and affect were within normal limits, that Plaintiff was cooperative, that she had normal thought content, thought processes, speech quality, and speech content, and that Plaintiff had below normal memory, abstract reasoning, attention, and concentration. (Tr. at 914). She opined, in relevant part, that Plaintiff was able to understand and remember simple instructions and to carry out simple instructions and that Plaintiff had a moderate limitation in her ability to make judgments on simple work-related decisions. (*Id.* at 909). She also opined that Plaintiff had marked limitations in the following areas: (1) ability to understand and remember complex instructions; (2) ability to carry out complex instructions; (3) ability to make judgments on complex work-related decisions; and (4) ability to respond appropriately to usual work situations and to changes in a routine work setting. (*Id.* at 909-10). Dr. Kasprzak further noted that Plaintiff's activities of daily living indicated that she was capable of a repetitive task. (*Id.* at 909). The ALJ gave Dr. Kasprzak's opinion great weight, finding that her opinion was consistent with the record as a whole, which the ALJ found "shows that the claimant has at least fair insight and judgment and generally clear, logical, and goal-directed thought processes." (*Id.* at 936).

Plaintiff contends that the ALJ failed to incorporate work-related limitations related to the marked limitations in Plaintiff's ability to respond appropriately to usual work situations and changes in a routine work setting. (Doc. 22 at 24). She argues that the ALJ improperly offered no explanation as to why the marked limitation was excluded. (*Id.*). Defendant responds that although the ALJ did not specifically note that particular limitation in the RFC finding, the RFC nevertheless accommodates the limitations. (*Id.* at 29).

The Court agrees with Defendant that the RFC accommodates Dr. Kasprzak's opinion regarding marked limitations in Plaintiff's ability to respond appropriately to usual work

situations and changes in a routine work setting because it restricts Plaintiff to simple, routine, repetitive, unskilled work, with no in-person public contact. (*Id.* at 29 (citing Tr. at 910, 930)). The decision reflects that in reviewing the opinion evidence that supported her RFC finding, the ALJ explicitly took Dr. Kasprzak's opinion regarding the relevant limitations into account. (Tr. at 936). Although the ALJ did not specifically list that limitation in the RFC finding, "[t]he ALJ is not required to use magic words in the RFC and 'there is no requirement that the ALJ include every limitation verbatim [in] her RFC determination.'" *Philpot v. Comm'r of Soc. Sec.*, No. 6:16-cv-417-Orl-40TBS, 2017 WL 912122, at *3 (M.D. Fla. Feb. 14, 2017), *report and recommendation adopted*, No. 6:16-cv-417-Orl-40TBS, 2017 WL 897342 (M.D. Fla. Mar. 7, 2017) (quoting *Hilton v. Comm'r of Soc. Sec.*, Case No. 6:14-cv-1339-Orl-GJK, 2016 WL 561364, at *3 (M.D. Fla. Feb. 12, 2016)). The record reflects that the ALJ considered all the medical evidence and all of Plaintiff's limitations, including the marked limitations at issue, and incorporated them into the RFC. For these reasons, the Court finds no merit in Plaintiff's second assignment of error.

## III. Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds that substantial evidence supports the ALJ's decision and that the decision was decided upon proper legal standards. Accordingly, it is hereby **ORDERED** that the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on August 2, 2019.

_____
MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties